UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOUGLAS AUKEMA; PATRICIA A. AUKEMA;
JESSE BARNHART; CHARITY A. BARNHART;
SCOTT H. BODINE; CONNIE M. BODINE;
ANTHONY BURCHELL; CYNTHIA BURCHELL;
GARY W. BURCHELL; CLIFFORD CASTLINE;
ALICE CASTLINE; BRUCE T. COOK; AMY M.
COOK; GAIL P. FISHER; DOUGLAS GREENE;
HERBERT A. HIBBARD; DANIEL L. HIBBARD;
MARY B. HIBBARD; AUGUST HIEMSTRA;
LESLIE J. HIEMSTRA; JOHN P. HRICIK; SUSIE
A. HRICIK; STELLA HRICIK; STEFAN
JAKUBOWSKI; JADWIGA JAKUBOWSKI;
JAMES P. KEESLER; ELIZABETH F. KEESLER;
JOSEPH W. KELLICUTT; DORLEEN
KELLICUTT; MICHAEL J. KELLICUTT; SUSAN
KELLICUTT; ROBERT D. KUZEL; CHERYL A.
KUZEL; CHARLES W. LEE; SUSAN F. LEE;
GARY A., LEE; MARY S. LEE; EDDIE W.
MASLIN; CAROL M. MASLIN; PIETRO
MAUCERI; GUISEPPINA MAUCERI; JARRETT
D. NEWBY; NANCYJ. NEWBY; ORRIN G.
PENDELL; EDWARD RUTKOWSKI; DONNA
RUTKOWSKI; DAVID W. SCHAEFFER; JOAN
P. SCHAEFFER; GARY L. SMITH; KIM SMITH;
DOROTHY SMITH; NORMAN J. SWEENEY;
RUTH A. SWEENEY; DANIEL J. WILLIAMS;
CHARITY J. WILLIAMS,

                              Plaintiffs,

              -v-
                                                    3:11–CV–489

CHESAPEAKE APPALACHIA, LLC and
STATOILHYDRO USA ONSHORE
PROPERTIES, INC.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LEVENE GOULDIN & THOMPSON, LLP                  CYNTHIA ANN MANCHESTER, ESQ.
Attorneys for Plaintiffs
P.O. Box F-1706
Binghamton, NY 13902

450 Plaza Drive                                 MARIA E. LISI-MURRAY, ESQ.
Vestal, NY 13850                                SCOTT R. KURKOSKI, ESQ.


THE WEST FIRM, LLP                              THOMAS S. WEST, ESQ.
Attorneys for Defendant Chesapeake              YVONNE E. HENNESSEY, ESQ.
    Appalachia, LLC
677 Broadway
8th Floor
Albany, NY 12207


BRACEWELL & GIULIANI LLP                        BRADLEY J. BENOIT, ESQ.
Attorneys for Defendant Statoilhydro
    USA Onshore Properties, Inc.
711 Louisiana Street
Suite 2300
Houston, TX 77002

DAVID N. HURD
United States District Judge


## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs Douglas and Patricia A. Aukema and other landowners[1] (collectively

"plaintiffs") brought this declaratory judgment action against Chesapeake Appalachia, LLC

("Chesapeake") and Statoilhydro USA Onshore Properties, Inc. ("Statoil") (collectively

"defendants") seeking a declaration that certain oil and gas leases entered into between the

---

[1] There are fifty five named plaintiffs in this action, many of whom are husband and wife.  For brevity, all fifty five plaintiffs named in the caption will not be repeated here.

parties expired at the conclusion of the primary terms of those leases and/or that the terms have not been extended by payment or force majeure.[2]  See Am. Compl..  Finally, plaintiffs charge defendants with violating New York General Business Law section 349.  Id.

Defendants moved to stay this litigation pending the outcome of a motion to compel arbitration filed in Alexander v. Chesapeake Appalachia, LLC, 3:11–CV–308 ("Alexander"). In the event the motion to compel arbitration is granted, defendants request to stay the instant matter pending the completion of arbitration in Alexander.  Plaintiffs opposed and defendants replied.  The motion was taken on its submissions without oral argument.

In Alexander, 259 plaintiffs brought suit against Chesapeake and Statoil seeking, inter alia, a declaration that certain oil and gas leases with the defendants expired based on the primary lease terms.  In that case, all but two of the approximately 150 oil and gas leases at issue contained a broad arbitration clause.  Chesapeake and Statoil moved to compel arbitration as to those leases, and to stay the claims of the non-arbitrating plaintiffs. Defendants' motion to compel arbitration was granted and a discretionary stay was issued as to the non-arbitrating plaintiffs' claims.  See Alexander v. Chesapeake Appalachia, LLC, 3:11–CV–308, Dkt. No. 24.

## II.  BACKGROUND

The following facts are undisputed.  Plaintiffs are a group of landowners who reside in New York State throughout Broome and Tioga counties.  Between 2000 and 2006, the

---

[2]  The amended complaint also requests a declaratory judgment, "as to those leases which have not yet reached the end of their primary terms, that all such leases have not been extended to the present date." Am. Compl. at 23.  At the time the amended complaint was filed on September 2, 2011, only one lease had not yet reached the expiration of its primary term—a lease entered into by plaintiffs Joseph W. and Dorleen Kellicutt.  Absent extension, that lease expired on September 5, 2011.  Therefore this request is now moot.

plaintiffs each[3] entered into separate oil and gas leases with either Central Appalachian Petroleum ("CAP"); Phillips Production Company ("Phillips"); Fortuna Energy, Inc. ("Fortuna"); or Fairman Drilling Company ("Fairman") (collectively the "leases").[4]  Plaintiffs each leased to CAP, Phillips, Fortuna, or Fairman all oil, gas, and constituents underlying their property, and the rights necessary to develop, produce, measure, and market them.

The one CAP lease at issue was executed in 2000 for a ten year primary term.  See Am. Compl., Exs. A, B.  There are twenty nine Phillips leases involved here.  The Phillips leases are easily described as two groups, Group A and Group B.  The Group A leases were executed in 2000, for either a ten year primary term or a five year term with a five year extension.  See id., Exs. H, J.  The Group B leases were executed during the period 2003 through 2006, for a five year primary term.  See id., Exs. I, J.  The one Fortuna lease was executed in 2006 for a five year primary term.  See id., Exs. M, N.  The one Fairman lease was executed in 2001 for a ten year primary term.  See id., Exs. P, Q.  Each lease was duly recorded in the proper county clerk's office.  In total, there are thirty two leases that are the subject of this litigation.

Since that time, the leases have been acquired by Chesapeake which, in turn, assigned 32.5% of its interest in the leases to Statoil.  By the primary lease terms of five and

---

[3]  Some of the leases were entered into jointly by husband and wife, while others were entered into individually.

[4]  In addition to the companies mentioned here, the initial complaint included leases with Columbia Natural Resources, LLC ("CNR").  The CNR leases, like those in Alexander, contained an arbitration clause.  Several other leases in the initial complaint also contained arbitration clauses.  Defendants moved to compel arbitration as to those leases and to stay the action as to the non-arbitrating plaintiffs.  Subsequently, plaintiffs voluntarily discontinued the claims of those individuals required to arbitrate.  Plaintiffs then filed an amended complaint naming only those individuals and leases not containing arbitration clauses.  Due to the voluntary dismissal of plaintiffs and the amendment of the complaint, defendants withdrew their motion to compel arbitration.

ten years, the leases at issue expired in 2008, 2009, 2010, and 2011.  As of those dates, no wells had been drilled on the properties and no royalties had been paid to plaintiffs.  To date, there has still been no drilling and no royalty payments made.

## III.  LEGAL STANDARD–DISCRETIONARY STAY

The parties first disagree over which standard is to be applied when granting a discretionary stay.  Defendants adopt the standard articulated in Empire State Ethanol & Energy, LLC v. BBI Int'l, No. 1:08CV623, 2009 WL 1813205, at *1 (N.D.N.Y. June 25, 2009) (Sharpe, J.).  Under that standard, a court must consider:  "1) whether there are common issues between the arbitration and the litigation; 2) whether those issues are likely to be resolved in arbitration; 3) whether the failure to grant a stay will prejudice the defendant; and 4) whether the stay will prejudice the plaintiff."  Id. (citing WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) and Sierra Rutile Ltd. v. Katz, 937 F.2d 743 (2d Cir. 1991)).  The moving party bears the burden of demonstrating that a stay is justified.  See WorldCrisa Corp., 129 F.3d at 76.  Plaintiffs oppose the Empire State standard, and instead urge consideration of the following factors:  (1) whether a stay would promote judicial economy; (2) the balance of harm to the parties; (3) the duration of the requested stay; and (4) any other factors pertinent to the circumstances of the case.  See Youngbloods v. BMG Music, No. 07 Civ. 2394, 2011 WL 43510, at *4 (S.D.N.Y. Jan. 6, 2011).

The facts of Empire State and Youngbloods are distinguishable from each other, and from the instant matter.  Notably, Youngbloods did not involve an arbitration proceeding, but instead two concurrent federal court actions.  See Youngbloods, 2011 WL 43510, at *1–3.  However, the standards articulated in the two cases are extremely similar.  Empire State specifically considers two "commonality" factors which Youngbloods does not:  (1) whether

there are common issues between the arbitration and the litigation, and (2) whether those issues are likely to be resolved in arbitration.  See Empire State, 2009 WL 1813205, at *1.  Although the Youngbloods standard does not specifically include those two factors, it does evaluate whether judicial economy would be promoted by a stay.  See Youngbloods, 2011 WL 43510, at *4.  The "judicial economy" factor takes into account any "commonality" the instant matter has with the parallel proceeding.  See id. at *5–6 (considering the similarity of the two actions and likelihood that the New York action would be resolved by resolution of the California action in determining whether judicial economy would be promoted by a stay).  The remainder of the analyses under both Empire State and Youngbloods contemplate the prejudice to the parties.

Accordingly, the two standards are substantively the same.  Thus the following factors will be considered in determining whether to grant a discretionary stay of the instant litigation: (1) the promotion of judicial economy, which includes the commonality of issues and the likelihood that arbitration will resolve any common issues, and (2) the prejudice to the parties.

## IV.  DISCUSSION

### A.  Stay Pending Decision on Motion to Compel Arbitration in Alexander

Defendants first request to stay litigation in the instant matter pending the outcome of the motion to compel arbitration in Alexander.  In light of that motion being granted, defendants' request is now moot.

### B.  Stay Pending Completion of Arbitration in Alexander

Defendants next request that, in view of the Alexander matter proceeding to arbitration, this case be stayed pending resolution of that arbitration.  None of the leases involved in this case contain an arbitration clause.  Nevertheless, defendants contend that

because plaintiffs' claims concern common questions of law and fact as the claims in

Alexander, a discretionary stay is warranted as to all claims in this case in order to promote

judicial economy and avoid confusion as well as potentially inconsistent results.

In deciding whether a discretionary stay is warranted here, the promotion of judicial

economy and the harm to the parties will be considered.

## 1.  Judicial Economy

Plaintiffs contend judicial economy does not warrant a stay because arbitration in

Alexander will not conclusively resolve the issues in this case.  Defendants assert judicial

economy is served so long as the arbitration narrows, clarifies, simplifies, or provides

meaningful insight into the issues before the court.  Because the Alexander arbitration may

resolve some of the issues in this action, and provide meaningful insight into others,

defendants argue a stay is appropriate.  As explained above, the commonality of issues and

likelihood that those issues will be resolved in arbitration must be considered.

## a.  Common Issues

First, both this case and the Alexander arbitration seek a determination that certain oil

and gas leases currently held by defendants expired at the conclusion of their primary term.

Both cases arise from essentially the same set of facts.  Hundreds of landowners in adjoining

counties signed contracts leasing to defendants the rights to develop and produce oil and

gas underlying their property.  The defendants contend that a July 2008 study conducted by

the Department of Environmental Conservation and a subsequent memorandum from then-

New York State Governor David Patterson constituted a moratorium on the use of horizontal

high-volume hydraulic fracturing.  Plaintiffs in both cases argue those events did not prevent

defendants from development under the leases.  Further, the complaints allege defendants'

attempted extension of the leases is a deceptive business practice in violation of New York General Business Law section 349.

The differences between the cases are more significant.  First, this case involves thirty two leases, ninety percent of which are Phillips leases.  By contrast, Alexander involves approximately 150 leases comprised exclusively of CNR and CAP leases.  Further, not one of the leases involved in this case includes an arbitration clause.  All but two of the approximately 150 Alexander leases contain an arbitration clause.  Defendants emphasize that the one CAP lease in this case contains the same covenants clause and prescribed payments language and gives rise to the same claims as do the CAP leases in Alexander.  However, the remaining leases in this case do not contain the same covenants clause nor include prescribed payments language.  Instead, the Phillips and Fortuna leases contain an express force majeure clause.[5]  None of the Alexander leases contain an express force majeure clause.  Further, the habendum clause,[6] which governs the duration of the primary term, are different in the various leases.  Plaintiffs explain that this is significant because whether a particular lease may be extended upon the happening of a force majeure event is dependent on both the wording of the force majeure clause and the habendum clause.

Finally, defendants' reliance on then-Chief District Judge Norman A. Mordue's Order of Reassignment is misplaced.  The instant matter was originally before District Judge

---

[5]  A force majeure clause in a contract excuses nonperformance when circumstances beyond the control of the parties prevent performance.  See e.g., Harriscom Svenska, AB v. Harris Corp., 3 F.3d 576, 580 (2d Cir. 1993).

[6]  A habendum clause is typically found in standard oil and gas leases and is used to fix the duration of the lease.  See e.g., Wiser v. Enervest Operating, L.L.C., 803 F. Supp. 2d 109, 113, n.3 (N.D.N.Y. 2011) (Peebles, M.J.).

Mordue and the Alexander case before the undersigned.  On August 24, 2011, a telephone conference was held in which plaintiffs' counsel suggested there might be an opportunity to manage certain aspects of discovery of these two actions together.  That same day, District Judge Mordue issued an Order of Reassignment, finding that the two cases were "directly related" and assigning the instant matter to the undersigned.  Defendants have overstated the relevance of that Order.  These two cases have neither been consolidated nor joined, and are instead independent, separate actions.

The facts giving rise to both cases are similar, but the lease terms and thus legal issues vary widely.  This factor weighs against granting a stay.

### b.  Resolution of Common Issues

Next, the likelihood that any common issues will be resolved by the Alexander arbitration must be considered.  First, none of the plaintiffs in the present action will be bound by an arbitration panel's opinion.  Thus no issues in this case will actually be resolved by the Alexander arbitration.

While not binding, an arbitration panel's decision may have a persuasive effect in the future.  For example, an arbitration panel may decide whether Chesapeake and Statoil's attempts at extending the leases constitute deceptive business practices.  Further, an arbitration panel may consider the factual circumstances of the moratorium in applying the covenants clause in the CAP and CNR leases.  The panel's conclusion regarding the moratorium may be persuasive in applying the force majeure provisions in the Phillips and Fortuna leases.

Although the <u>Alexander</u> arbitration panel may explore and ultimately decide issues similar to those presented here, any decision reached by that panel is non-binding on the plaintiffs in this case.  Accordingly, this factor weighs against granting a stay.

After considering the lack of common issues and the non-binding effect of the arbitration on this matter, it is found that judicial economy would not be promoted by a stay of this action.  Instead, judicial economy would be best served by permitting this litigation to proceed.

## 2.  <u>Harm to the Parties</u>

Defendants argue they will be prejudiced by being deprived of their arbitration rights in <u>Alexander</u> if a stay is not granted here.  Specifically, they assert that a determination against them in this action relative to the extension of the CAP lease could preclude the entire arbitration in <u>Alexander</u>.  Defendants also point out that they may incur expenses due to duplicative discovery and unnecessary litigation.

Plaintiffs contend a stay will seriously prejudice them because they are not able to convey good and marketable title to their homes and farms and a delay of this litigation will only prolong that inability.  Further, many plaintiffs are elderly or suffer from health issues and need the opportunity to lease the land at fair market rates and to recover royalties for the development of minerals.  As has been repeated, no plaintiffs in this case are subject to an arbitration clause.  This is a separate, independent action from <u>Alexander</u>, involving entirely different leases (with the exception of one).  Plaintiffs would suffer prejudice by being forced to await the outcome of an arbitration they are not parties to and the outcome of which would not be binding on them.

Defendants and plaintiffs have put forth arguments as to why they will be prejudiced if a stay is, or is not, granted.  After full consideration of the prejudice to both sides, the balance of harm to the parties weighs against granting a stay.

In summary, a review of the factors outlined in the Empire State and Youngbloods standards leads to the conclusion that a discretionary stay of this action pending the Alexander arbitration is not warranted.

## V. CONCLUSION

Defendants' request for a discretionary stay pending decision on the motion to compel arbitration in Alexander is now moot as that motion has been granted.  While arbitration will proceed in Alexander, subject to the time limits imposed therein, the plaintiffs in this case may continue litigating the merits of their case in federal court.  Defendants cannot delay defending the claims in this case merely because they are also defendants in a separate action in which they will be arbitrating similar claims with different plaintiffs.  For the reasons described above, defendants are not entitled to a discretionary stay in this action.

Therefore, it is

ORDERED that

1.  Defendants' request to stay this matter pending outcome of the motion to compel arbitration in Alexander v. Chesapeake Appalachia, LLC, 3:11–CV–308, is DENIED as moot; and

2.   Defendants' request to stay this matter pending completion of arbitration in Alexander v. Chesapeake Appalachia, LLC, 3:11–CV–308, is DENIED.

IT IS SO ORDERED.

United States District Judge

Dated:  March 21, 2012
        Utica, New York.